UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NORTH CAROLINA
GREENVILLE DIVISION

IN RE:

| | | |
|---|---|---|
| SHARON KENNEDY, ) | Case No. 17-03101-5-JNC |
|   Debtor ) | |
| ) | Chapter 13 Adv. Proc. |
| SHARON KENNEDY, ) | |
|   Plaintiff ) | No. |
| ) | |
| v. ) | |
| ) | |
| CALIBER HOME ) | |
| LOANS; ) | |
| SPECIALIZED LOAN ) | |
| SERVICING, LLC; ) | |
| SUBSTITUTE ) | |
| TRUSTEE ) | |
| SERVICES, Substitute ) | |
| Trustee ) | |
|   Defendants | |

**COMPLAINT OBJECTING TO PROOF OF CLAIM; SEEKING CLAIM DETERMINATION AND DAMAGES IN CORE ADVERSARY PROCEEDING**

1. Plaintiff objects to Defendants Caliber Home Loans's ("Caliber") and Specialized Loan Servicing, LLC ("SLS") secured claim pursuant to 11 U.S.C. section 502 as the claim fails to adequately support why it should recover the amount of the secured claim, and thus wrongfully and unlawfully overstates the amount of Debtors' liability.

2. This is also an action for actual and statutory damages filed by the Debtors pursuant to Sections 105, 362, 501, 502, 503 and 506 of the Bankruptcy Code and Rules 2016 and 3001 of the Bankruptcy Rules, and violations of N.C.G.S. 75-1.1, et seq, and N.C.G.S. 75-50, et seq., *Prohibited Acts by Debt Collectors*.

3. Plaintiff reserves the right to amend this Complaint should new allegations arise in the course of further investigation and discovery.

4. This claim is brought in defense of foreclosure initiated by Defendant Caliber.

**JURISDICTION AND VENUE**

5. Jurisdiction is conferred on this Court pursuant to the provisions of Section 1334 of Title 28 of the United States Code in that this proceeding arises in and is related to the above-captioned Chapter 13 case under Title 11 and concerns property of the Debtor in that

case.

6. This Court has both personal and subject matter jurisdiction to hear this case pursuant to Section 1334 of Title 28 of the United States Code, and Section 157(b)(2) of Title 28 of the United States Code.

7. This Court has supplemental jurisdiction to hear all state law claims pursuant to Section 1367 of Title 28 of the United States Code.

8. This Court also has jurisdiction to hear the Fair Debt Collection Practices Act and Unfair and Deceptive Trade Practices Act violations pursuant to Section 1692 of Title 15 of the United States Code; thus, federal subject matter jurisdiction is properly founded upon Section 1331 of Title 28 of the United States Code.

9. This matter is primarily a core proceeding and therefore the Bankruptcy Court has jurisdiction to enter a final order. However, in the event this case is determined to be a non-core preceding, then and in that event the Plaintiffs consent to entry of a final order by the Bankruptcy Judge.

10. Venue lies in this District pursuant to Section 1391(b) of Title 28 of the United States Code.

**NOW COMES**, Plaintiff, Sharon Kennedy, by and through the undersigned counsel and complaining of Defendants Caliber and SLS, alleges and says:

## PARTIES

1. Plaintiff, SHARON KENNEDY, (hereinafter "Plaintiff" or "Ms. Kennedy") is a Debtor in this case, having filed their Chapter 13 petition on June 22, 2017, in case number 17-03101, presently pending before this Court.

2. Upon information and belief, Defendant Caliber is a financial services company headquartered in Irving, Texas and maintains a registered office and agent located at CT Corporation System, 160 Mine Lake Court, Suite 200, Raleigh, North Carolina 27615-6417. Caliber is a creditor in the Debtor's case presently pending before this Court. Caliber is, upon information and belief, approved under the laws of North Carolina to conduct business servicing mortgage loans secured by real property herein.

3. Upon information and belief, Defendant SLS is a financial services company headquartered in Highlands, Colorado and maintains a registered office and agent located at 15720 Brixham Hill Avenue #300, Charlotte, NC 28277.

4. Defendant Substitute Trustee Services (hereinafter "Substitute Trustee") is named as the present Substitute Trustee of the Deed of Trust that secures the loan, which is the subject

of the complaint, and is named as a party in its capacity as Substitute Trustee to the extent necessary for purposes of the declaratory relief sought by the Plaintiff.

## FACTS

5. Plaintiff and her former husband, Mr. Jeffrey Kennedy (now deceased), executed a Promissory Note and Deed of Trust in favor of JPMorgan Chase Bank, N.A. ("Chase") in the original amount of One Hundred Twenty-One Thousand and 00/100 Dollars ($121,000.00) (this indebtedness is referred to hereinafter as the "Loan") on or about September 26, 2005. The Loan was secured by the real property located at 48155 Buxton Back Road, Buxton, North Carolina, 27920 (hereinafter "the Property"). See Promissory Note and Deed of Trust attached hereto as Exhibit 1.

6. In or about 2011, Mr. and Mrs. Kennedy separated and divorced.

7. On or about April 13, 2011, as a part of the Interim Distribution Order entered by the presiding judge in Dare County and related to the division of marital property, Mr. Kennedy conveyed his interest in the Property to Plaintiff. See Non-Warranty Deed attached hereto as Exhibit 2.

8. Plaintiff fell behind on payments for the Loan due to the reduction in income from the divorce from Mr. Kennedy and requested loss mitigation from Chase, which was approved.

9. On or about November 3, 2011, Plaintiff executed the Home Affordable Modification Agreement ("Chase Modification Agreement") with Chase. See Chase Modification Agreement attached hereto as Exhibit 3.

10. On or about December 7, 2011, Chase executed the Chase Modification Agreement and sent Plaintiff a letter indicating Plaintiff completed the requirements for a permanent modification and enclosed the executed Chase Modification Agreement. See Exhibit 3.

11. The Chase Modification Agreement indicates, on Page 1, "if [Plaintiff's] representations and covenants in Section 1 continue to be true in all material respects, then this Home Affordable Modification Agreement […] will, as set forth in Section 3, amend and supplement (1) the Mortgage on the Property, and (2) the Note secured by the Mortgage."

12. Also on Page 1, the Chase Modification Agreement indicates it "will not take effect unless the preconditions set forth in Section 2 have been satisfied."

13. Under Section 2(B), entitled "Acknowledgements and Preconditions to Modification," the Chase Modification Agreement indicates the Loan "will not be modified unless and until (i) the Lender accepts this Agreement by signing and returning a copy of it to [Chase], and (ii) the Modification Effective Date (as defined in Section 3) has occurred."

14. Section 3 of the Chase Modification Agreement, entitled "The Modification," indicates the Loan "will automatically become modified on December 01, 2011" if Plaintiff's

3

representations and covenants in Section 1 remain true and "all preconditions to the modification in Section 2 have been met."

15. Under Section 4(F), entitled "Additional Agreements," the Chase Modification Agreement indicates "the Lender and [Plaintiff] will be bound by, and will comply with, all of the terms and conditions of the Loan Documents."

16. Plaintiff's representations and covenants in Section 1 of the Chase Modification Agreement remain true.

17. Plaintiff met all preconditions of Section 2 of the Chase Modification Agreement.

18. Section 3 of the Chase Modification Agreement indicates a due date of December 01, 2011 for "the first modified payment." Plaintiff made the first modified payment and other monthly payments according to the terms of the Chase Modification Agreement.

19. Upon information and belief, servicing of the modified loan was transferred from Chase to Vericrest Financial, now known as Caliber, in or about March 2013.

20. Plaintiff made payments to Vericrest in March and April 2013, by telephone, in accordance with the terms of the Chase Modification Agreement.

21. In or about May 2013, Plaintiff received notice that the loan servicer of her mortgage loan was changing to Caliber Home Loans.

22. In or about May 2013, Plaintiff called Caliber to inquire how and where to make monthly mortgage payments. Plaintiff made her monthly payment, according to the terms of the Chase Modification Agreement, while on the call with Caliber.

23. On or about June 20, 2013, Chase, granted, sold, assigned, transferred, and conveyed all beneficial interest in the Deed of Trust to Caliber, as indicated in the North Carolina Assignment of Deed of Trust recorded on August 8, 2013 with the Dare County Register of Deeds.

24. As a result of the Assignment of Deed of Trust, Caliber is a successor-in-interest to the Chase Modification Agreement.

25. In or about June 2013, Plaintiff called Caliber to make a payment and was informed by Caliber that her mortgage loan was under "modification review" and instructed her to hold off on making payments until Caliber could confirm the amount of her monthly mortgage payment.

26. Throughout June and July 2013, Plaintiff continued to call Caliber to make her monthly mortgage payments, but her payments were refused by Caliber due to "modification review" by Caliber.

27. Upon information and belief, on or about July 15, 2013, Caliber sent Plaintiff a loan modification solicitation offering a Streamline Trial with a monthly payment in the

4

amount of Five Hundred Ten and 23/100 ($510.23) due on August 1, 2013, September 1, 2013, and October 1, 2013. <u>See</u> Notice of Error ("NOE") Response dated March 23, 2016, attached as Exhibit 4.

28. In or around August 2013, Client called Caliber and Caliber refused to accept payment from Plaintiff but referred Plaintiff to the hardest hit program, for which Plaintiff did not qualify because she was unable to pay the arrearage of three months of payments at one time.

29. On or about August 8, 2013, Caliber sent Plaintiff a correction letter advising the loan modification solicitation sent on or about July 15, 2013 was sent in error.

30. Upon information and belief, Caliber referred Plaintiff's mortgage loan to foreclosure on or about September 20, 2013. <u>See</u> Exhibit 4

31. On or about December 27, 2013, Caliber continued foreclosure proceedings, with a foreclosure hearing scheduled for February 21, 2014.

32. In or about February 2014, as Plaintiff had submitted a complete loss mitigation application, Caliber placed a hold on foreclosure proceedings due to loss mitigation review.

33. On or about April 3, 2014, Caliber mailed a letter to Plaintiff indicating Caliber was reviewing Plaintiff's loss mitigation application.

34. Over the course of about ten months, Caliber requested documents from Plaintiff and Plaintiff submitted requested documents to Caliber.

35. On or about February 11, 2015, an amended notice of hearing was served on Plaintiff by Sheriff Deputy, for a foreclosure hearing scheduled for March 13, 2015, in Dare County.

36. On or about February 13, 2015, a formal Request for Information was submitted to Caliber, on behalf of Plaintiff, via email and certified mail, return receipt requested.

37. On or about February 19, 2015, Caliber indicated by telephone that Plaintiff's mortgage loan was being reviewed for a Home Affordable Modification Program loan modification but Plaintiff needed to submit updated bank statements for the months of December 2014 and January 2015, with rental deposits highlighted.

38. On or about February 20, 2015, Plaintiff submitted bank statements for December 2014 and January 2015, with rental deposits highlighted, to Caliber by email.

39. On or about March 6, 2015, Caliber mailed Plaintiff a letter indicating the results of a valuation report completed at the direction of Caliber as a part of Plaintiff's loss mitigation application.

40. On or about March 9, 2015, Caliber indicated Plaintiff's application was complete, but underwriting requested a non-warranty deed indicating Mr. Kennedy transferred his

5

interest in the Property to Plaintiff.

41. On or about March 10, 2015, the non-warranty deed, previously submitted by Plaintiff to Caliber, was emailed to Caliber per its request.

42. Upon information and belief, due to loss mitigation review, Caliber canceled the foreclosure hearing scheduled for March 13, 2015.

43. On or about April 10, 2015, an appeal of the loss mitigation denial was submitted to Caliber by email, on behalf of Plaintiff. See attached Exhibit 5.

44. On or about June 10, 2015, a Notice of Error ("NOE #1") was sent to Caliber via email and certified mail, on Plaintiff's behalf, due to Caliber's errant servicing of the loan. See attached Exhibit 6.

45. On or about June 26, 2015, Caliber responded to NOE #1, indicating the Chase Modification Agreement was temporary, not a permanent modification of the Loan; that the appeal of loss mitigation denial was denied; and a new loan modification application would be sent to Plaintiff. See attached Exhibit 7.

46. On or about July 30, 2015, on behalf of Plaintiff, NOE #2 was sent to Caliber via email and certified mail due to the servicing of the loan, more specifically due to the treatment of the Chase Modification Agreement as a temporary modification. See NOE #2 attached as Exhibit 8.

47. On or about August 19, 2015, Caliber responded to Plaintiff's NOE #2, indicating Plaintiff began making payments to Caliber in May 2013, which was applied to February 2013 payment and the loan is due for March 2013 and subsequent payments. See NOE #2 Response attached as Exhibit 9.

48. On or about September 28, 2015, Caliber mailed Plaintiff a solicitation for loss mitigation application. See attached Exhibit 10.

49. On or about October 1, 2015, Plaintiff was served an amended notice of hearing, by posting on her front door, indicating a foreclosure hearing was scheduled for November 6, 2015.

50. Throughout October, November, and December 2015, Plaintiff submitted a Uniform Borrower Assistance ("UBA") form and supplemental documents to Caliber to apply for loss mitigation, while Caliber continued to request documents, such as a bank statement for December 2015 and profit-and-loss statements for December 2015 related to Plaintiff's employment.

51. On or about November 6, 2015, a foreclosure hearing was held in Dare County and continued for 60 days to allow time to resolve the matter without foreclosure.

52. On or about January 8, 2016, a foreclosure hearing was held in Dare County and continued for 60 days to allow time to resolve the matter without foreclosure.

6

53. On or about January 13, 2016, Plaintiff was advised by a Caliber representative that December 2015 bank statement was all that was needed to complete Plaintiff's loss mitigation application. Plaintiff submitted December 2015 bank statement with rental income deposits highlighted, via email on or about January 15, 2016.

54. On or about March 8, 2016, a Notice of Error was submitted on behalf of Plaintiff to Caliber regarding the errant servicing of the Plaintiff's mortgage loan, more specifically requesting documents already received or unable to be generated. See NOE #4 attached as Exhibit 11.

55. On or about March 23, 2016, Caliber mailed the attached response to NOE #4, requesting documents from Plaintiff, including "most recent quarter profit and loss statement as the profit and loss statement on file is outdated from October, November, and December, 2015". See attached Exhibit 4.

56. In or about the months of April and May 2016, Caliber requested documents from Plaintiff and Plaintiff submitted such documents to Caliber, including monthly profit and loss statements related to Plaintiff's employment and monthly bank statements with rental deposits highlighted.

57. On or about May 13, 2016, a foreclosure hearing was held in Dare County and continued for 60 days to allow time to resolve the matter without foreclosure.

58. On or about June 14, 2016, a complaint was submitted to the Consumer Finance Protection Bureau, on behalf of Plaintiff, regarding the servicing of Plaintiff's loan by Caliber. See attached Exhibit 12.

59. On or about July 4, 2016, Caliber sent the attached letter to Plaintiff indicating terms of the Chase Modification Agreement. See letter attached as Exhibit 13

60. On or about July 5, 2016, Caliber sent the attached letter to Plaintiff indicating all documents had been received and Plaintiff's document package related to modification of the Loan was deemed complete. See letter attached as Exhibit 14

61. On or about July 11, 2016, Caliber mailed a letter to Plaintiff requesting documents related to retirement to complete Plaintiff's loss mitigation application. See letter attached as Exhibit 15.

62. Upon information and belief, the foreclosure hearing scheduled for July 15, 2016 related to Plaintiff's loan was canceled by request of Caliber.

63. On or about July 18, 2016, an email inquiry was sent to Caliber's counsel at Hutchens Law Firm, the law firm representing Caliber in foreclosure proceedings related to Plaintiff's property, about Plaintiff's loss mitigation application. See attached Exhibit 16.

64. On or about July 19, 2018, Caliber's counsel at Hutchens Law Firm responded to the email inquiry by email indicating the firm would look into the issue with Caliber. See Exhibit 16.

7

65. On or about August 8, 2016, an email was sent to Caliber's counsel at Hutchens Law Firm to follow up on the inquiry into the loss mitigation application, as a response to the inquiry had not been received by Plaintiff. See Exhibit 16.

66. On or about August 10, 2016, Caliber mailed a letter to Plaintiff indicating her loss mitigation application was denied because requested documents were not submitted by Plaintiff. See attached as Exhibit 17.

67. On or about August 17, 2016, an appeal of the denial of loss mitigation was submitted to Caliber and Caliber responded with the same reason for denial. See attached as Exhibit 18.

68. On or about September 13, 2016, a complaint was submitted to North Carolina Commissioner of Banks ("NC COB Complaint") on behalf of Plaintiff regarding the servicing of Plaintiff's loan by Caliber. See NC COB Complaint attached as Exhibit 19.

69. Upon information and belief, on or about November 3, 2016, Caliber responded to Plaintiff's NC COB Complaint, indicating Caliber did not receive oral or written notification related to the denial of the loss mitigation application. See Caliber NC COB Response attached as Exhibit 20.

70. On or about November 30, 2016, Plaintiff submitted another complete loss mitigation package to Caliber and Hutchens Law Firm.

71. Throughout December and January 2017, Caliber requested documents and Plaintiff submitted requested documents to Caliber related to loss mitigation, including an obituary published in local newspaper for the death of Plaintiff's former husband, Mr. Kennedy.

72. On or about January 5, 2017, Caliber consented to continuance of foreclosure hearing scheduled for January 6, 2017, to February 3, 2017, due to review of loss mitigation.

73. On or about February 3, 2017, the foreclosure hearing was ordered continued to April 7, 2017 because Caliber and Hutchens Law Firm confirmed Plaintiff's loss mitigation application had been elevated for management review, as Plaintiff had submitted all documents requested by Caliber.

74. On or about February 8, 2017, Caliber mailed a letter to Plaintiff indicating her loss mitigation application was denied due to incomplete application submitted.

75. On or about February 21, 2017, a Notice of Error was submitted to Caliber related to the errant servicing of Plaintiff's mortgage loan by Caliber, more specifically not providing complete and decipherable payment transaction history for the mortgage loan and not providing full and accurate loss mitigation information. See NOE #5 attached as Exhibit 21.

76. On or about March 16, 2017, Caliber mailed the attached response to NOE #5, inviting Plaintiff to submit an updated loss mitigation application. See NOE#5 Response attached

as Exhibit 22.

77. In or about the months of March, April, and May 2017, Plaintiff submitted documents to Caliber, at Caliber's request, to update her loss mitigation application.

78. On or about May 16, 2017, foreclosure sale was ordered by the Dare County Clerk of Court, with a sale date scheduled for July 14, 2017.

79. On or about May 23, 2017, an appeal of the foreclosure order was filed on behalf of Plaintiff.

80. On or about June 22, 2017, Plaintiff filed Chapter 13 Bankruptcy in this Court, in defense of foreclosure.

81. On or about August 20, 2017, Caliber filed a Proof of Claim, including the Chase Modification Agreement, with this Court.

82. On or about December 22, 2017, SLS mailed Plaintiff a Notice of Servicing Transfer indicating the servicing of the mortgage loan had been transferred to SLS effective on December 18, 2017.

83. In or about January 2018, Plaintiff applied for a loan modification with SLS that was denied based on the "inability to achieve a principal and interest payment reduction."

84. As a result of Caliber's non-compliance with the Chase Modification Agreement and refusal to accept monthly payments, Plaintiff's property was foreclosed and the Loan has added cost and fees, including foreclosure costs, late fees, and attorney fees.

### FIRST CLAIM FOR RELIEF AGAINST CALIBER AND SLS
### OBJECTION TO PROOF OF CLAIM

1. The allegations contained in the preceding paragraphs are incorporated herein by reference as if fully set forth.

2. On or about September 5, 2017, Caliber filed a Proof of Claim in Plaintiff's Chapter 13 case alleging a secured claim due to arrearages and accelerated mortgage debt.

3. On or about December 18, 2017, the servicing of the mortgage loan was transferred to SLS from Caliber.

4. Caliber's Proof of Claim is objectionable as it fails to adequately support why it should recover the amount of the secured claim based on the following: (1) its refusal to honor the binding, permanent Chase Modification Agreement, to which it obtained ownership and servicing rights as a successor-in-interest; and (2) its refusal to accept payments from the Plaintiff in her attempts to comply with the terms of the permanent Chase Modification Agreement.

### SECOND CLAIM FOR RELIEF AGAINST CALIBER AND SLS
### BREACH OF CONTRACT

4. The allegations contained in the preceding paragraphs are incorporated herein by reference as if fully set forth.

5. On or about November 3, 2011, Plaintiff accepted the Chase Modification Agreement by executing it.

6. The Chase Modification Agreement was executed by Chase on or about December 7, 2011 and was effective as of December 10, 2011, when Plaintiff made her first modified payment.

7. Consideration in support of contract formation was exchanged by the parties in that:

    a. Plaintiff engaged in additional undertakings not required by or contemplated by the original Promissory Note and Deed of Trust concerning the Loan in their efforts to obtain the Modification Agreement; and

    b. Chase engaged in a forbearance of its right to pursue remedies available to it under the original Promissory Note and Deed of Trust.

8. The Modification Agreement was and is a binding contract between Chase and Plaintiff.

9. Upon information and belief, Caliber and SLS are the successors-in-interest to Chase related to Plaintiff's Loan.

10. As successors-in-interest to Chase's rights to service Plaintiff's Loan, Caliber and SLS are bound by the terms of the Chase Modification Agreement.

11. Caliber has breached the contract reflecting the existing Loan terms by refusing to honor the Chase Modification Agreement after servicing was transferred to it on or about April 16, 2013, by misapplying payments that were made by Plaintiff following the servicing transfer and by refusing to accept Plaintiff's Loan payments beginning in June 2013.

12. As a result of Caliber's breach of contract, Plaintiff has suffered damages in excess of $25,000.

### THIRD CLAIM FOR RELIEF AGAINST CALIBER AND SLS
### BREACH OF DUTY OF GOOD FAITH AND FAIR DEALING

13. The allegations contained in the preceding paragraphs are incorporated herein by reference as if fully set forth.

14. In every contract, there is an implied duty of good faith and fair dealing that neither party will do anything which injures the right of the other to receive the benefits of the agreement. A mortgage loan transaction or modification is a contract that would contain such an implied duty, as would the relationships between homeowner/servicer,

10

mortgagor/mortgagee, and borrower/creditor.

15. Caliber had a duty to honor the Chase Modification Agreement between Plaintiff and Chase, and to make good faith efforts to quickly determine the validity of the Chase Modification Agreement, if there was any question as to its status.

16. Caliber breached its duty of good faith and fair dealing in a number of ways, including, but not limited to:

    a. Preventing Plaintiff from performing under the Chase Modification Agreement;

    b. Refusing to honor the terms of the Chase Modification Agreement and charging Plaintiff interest and fees in excess of that permitted by the Chase Modification Agreement and applicable law;

    c. Misapplying payments made by Plaintiffs following the transfer of loan servicing to Caliber on or about April 16, 2013, as payments were not applied in accordance with the Chase Modification Agreement; and

    d. Failing to investigate Plaintiff's representations as set forth in the foregoing paragraphs as to the then-existing disposition of the Loan.

17. As successor-in-interest to Caliber, SLS is liable for Caliber's breach.

18. As a result of Caliber's actions, Plaintiff has suffered damages in excess of $25,000.00. Plaintiff has also suffered anxiety, frustration, and inconvenience in attempting to resolve this matter.

<u>FOURTH CLAIM FOR RELIEF AGAINST CALIBER AND SLS</u>
<u>UNFAIR DEBT COLLECTION</u>

19. The allegations contained in the preceding paragraphs are incorporated herein by reference as if fully set forth.

20. Plaintiff is a "consumer" as defined by N.C.G.S. §75-50(1), and any payments Plaintiff allegedly owed Caliber were "debts" as defined by N.C.G.S. §75-50(2).

21. Caliber and SLS are "debt collectors" as defined by N.C.G.S. §75-50(3).

22. Caliber collected and/or attempted to collect its debt from Plaintiff through the use of unfair threats in violation of N.C. Gen. Stat. § 75-51, through the following acts, which include, but are not limited to:

    a. Caliber continuing to request documents to modify the Loan while pursuing foreclosure proceedings and not honoring Chase Modification Agreement; and

    b. Such other actions of Caliber that may come to light through discovery.

11

23. Caliber collected and/or attempted to collect its debt from Plaintiff through the use of fraudulent, deceptive, and/or misleading representations in violation of N.C. Gen. Stat. § 75-54, through the following acts, which include, but are not limited to:

    a.  Making repeated demands to Plaintiff asserting that the Loan is in a delinquent status, that the Loan balance would be accelerated, and that the Property could potentially be sold to satisfy the accelerated Loan balance;

    b.  Falsely representing the amount owed in each demand regarding the alleged delinquent balance;

    c.  Refusing to honor the Chase Modification Agreement; and

    d.  Such other actions of Caliber that may come to light through discovery.

24. Caliber collected and/or attempted to collect its debt from Plaintiff through the use of unconscionable means in violation of N.C. Gen. Stat. § 75-55, through the following acts, which include, but are not limited to:

    a.  Making repeated demands to Plaintiff asserting that the Loan is in a delinquent status, that the Loan balance would be accelerated, and that the Property could potentially be sold to satisfy the accelerated Loan balance;

    b.  Falsely representing the amount owed in each demand regarding the alleged delinquent balance;

    c.  Refusing to honor the Chase Modification Agreement; and

    d.  Such other actions of Caliber that may come to light through discovery.

25. Caliber proximately caused injury to Plaintiff in that her Loan payments have not been appropriately applied by Caliber pursuant to the Chase Modification Agreement, she has been charged interest and fees in excess of the amount permitted in the Chase Modification Agreement or applicable law, and she has suffered anxiety, frustration, and inconvenience in attempting to resolve this matter.

26. Caliber and SLS, as successor-in-interest, are liable for Plaintiff's actual damages, which are in excess of $25,000.00, plus no less than $500.00 and no more than $4,000.00 in statutory damages for each violation of N.C. Gen. Stat. § 75-50, et. seq., and reasonable attorney's fees pursuant to N.C. Gen. Stat. § 75-16.1.

FIFTH CLAIM FOR RELIEF AGAINST CALIBER AND SLS
UNFAIR TRADE PRACTICES

27. The allegations contained in the preceding paragraphs are incorporated herein by reference as if fully set forth.

28. The business of making, modifying, and/or servicing home loans constitutes "commerce"

pursuant to N.C.G.S. § 75-1.1.

29. The actions of Caliber and SLS as set forth in this pleading constitute unfair and deceptive trade practices pursuant to N.C. Gen. Stat. § 75-1.1. In particular, Caliber's acts and failures to act, which include, but are not limited to, the following, were unfair and/or deceptive by:

   a. Preventing Plaintiff from performing under the Chase Modification Agreement;

   b. Refusing to honor the terms of the Chase Modification Agreement;

   c. Charging Plaintiff interest and fees in excess of that permitted by the Chase Modification Agreement and applicable law;

   d. Misapplying payments made by Plaintiff following the transfer of loan servicing to Caliber on or about April 16, 2011, as payments were not applied in accordance with the Chase Modification Agreement; and

   e. Failing to investigate Plaintiff's representations as set forth in the foregoing paragraphs as to the then-existing disposition of the Loan.

30. Caliber and SLS's above-described conduct was unfair and deceptive in violation of N.C.G.S. §75-1.1 because it was knowing and willful, offensive to established public policy, immoral, unethical, oppressive, unscrupulous and/or substantially injurious to consumers.

31. Caliber and SLS proximately caused injury to Plaintiff in that her Loan payments have not been appropriately applied by Caliber pursuant to the Chase Modification Agreement, they have been charged interest and fees in excess of the amount permitted in the Chase Modification Agreement or applicable law, and they have suffered anxiety, frustration, and inconvenience in attempting to resolve this matter.

32. Plaintiff is entitled to actual damages in excess of $25,000.00 for the violations of N.C. Gen. Stat. § 75-1.1.

33. Plaintiff is entitled to recover treble the amount of their actual damages pursuant to N.C. Gen. Stat. § 75-16, and Caliber is liable for reasonable attorney's fees pursuant to N.C. Gen. Stat. § 75-16.1.

<u>SIXTH CLAIM FOR RELIEF AGAINST CALIBER AND SLS
AND FIRST CLAIM AGAINST SUBSTITUTE TRUSTEE
CLAIM FOR DECLARATORY RELIEF</u>

34. The allegations contained in the preceding paragraphs are incorporated herein by reference as if fully set forth.

35. Caliber and SLS are named in this Claim as the owner, holder, and servicer of Plaintiff's

loan.

36. Substitute Trustee Services is named in this Claim only in its capacity as Substitute Trustee and as an interested party proceeding with the underlying foreclosure proceeding (14 SP 5, Dare County) at the instruction of Caliber.

37. Plaintiff seeks a declaratory judgment, pursuant to 28 U.S.C. § 2201, which sets aside the arrearage related to the Plaintiff's loan and the foreclosure order related to the underlying foreclosure proceeding (14 SP 5).

WHEREFORE, Plaintiff prays the Court as follows:

1. That the Court deny the claim of Defendants Caliber and SLS;

2. That the Court preclude Caliber and SLS from filing any amended, modified, or substitute claims in this case;

3. That the Court enter an Order requiring Caliber and SLS to comply with the terms of the Chase Modification Agreement;

4. That Caliber and SLS be ordered to pay to Plaintiff actual damages in an amount in excess of $25,000.00 for losses incurred by Plaintiff due to Caliber's actions;

5. That Plaintiff's actual damages from the unfair and deceptive trade practices of Caliber and SLS be trebled;

6. That Caliber and SLS be ordered to pay to Plaintiff her costs and attorneys' fees as permitted by statute;

7. That the Court award Plaintiff $4,000.00 in statutory damages for each of Caliber and SLS's violations of N.C. Gen. Stat. § 75-50, et seq.;

8. That the Court award the declaratory relief sought herein;

9. That the Court grants such other relief to the Plaintiff as the Court deems just and proper.

This the 30th day of October, 2018.

                LEGAL AID OF NORTH CAROLINA, INC.
                ATTORNEY FOR PLAINTIFF

By: _____
      Alexis C. Pugh, NCSB: 47131
      P. O Box 564
      Ahoskie, NC 27910
      T: (252)301-2701
      F: (919) 714-6564