SO ORDERED.

SIGNED this 3 day of May, 2019.

_____
**Joseph N. Callaway**
**United States Bankruptcy Judge**

_____

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NORTH CAROLINA**
**GREENVILLE DIVISION**

IN RE:

SHARON PEELE KENNEDY,
   Debtor

_____

Case No. 17-03101-5-JNC
Chapter 13

SHARON PEELE KENNEDY,
    Plaintiff,
v.

CALIBER HOME LOANS, SPECIALIZED LOAN
SERVICING, LLC, SUBSTITUTE TRUSTEE
SERVICES
    Defendants

Adv. Pro. No. 18-00114-5-JNC

**ORDER REGARDING MOTION TO DISMISS**

The matter before the court is the motion to dismiss this adversary proceeding filed by Defendant Caliber Home Loans ("Caliber"), D.E. 13. A hearing took place in Greenville, North Carolina on April 3, 2019.

## BACKGROUND

Sharon Peele Kennedy filed a petition for relief under chapter 13 of the Bankruptcy Code on June 22, 2017. On August 30, 2017, Caliber filed a proof of claim, Claim No. 3-1, in the amount of $153,269.99, secured by a deed of trust on Ms. Kennedy's residence located at 48155 Buxton Back Road, Buxton, North Carolina 27920 (the "Property"). The claim indicated the account was in arrears in the amount of $35,809.78. An amended claim was filed on September 5, 2017, reflecting a revised total claim amount of $153,089.99, including an arrearage of $35,411.93. Claim No. 3-2.

Ms. Kennedy filed the Complaint initiating this adversary proceeding on October 31, 2018. The Complaint sets forth six claims for relief, including (1) Objection to Caliber's Claim; (2) Breach of Contract; (3) Breach of Good Faith and Fair Dealing; (4) Unfair Debt Collection; (5) Unfair Trade Practices; and (6) Declaratory Judgment. Caliber seeks dismissal pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, made applicable to this adversary proceeding by Rule 7012(b) of the Federal Rules of Bankruptcy Procedure, contending that the Complaint fails to state a claim upon which relief may be granted.

## THE ALLEGATIONS OF THE COMPLAINT

In her Complaint, Ms. Kennedy alleges that on September 26, 2005, Ms. Kennedy and her former husband executed a note in favor of JPMorgan Chase Bank ("Chase") in the original principal amount of $121,000 secured by a deed of trust on the Property. In 2011, the Kennedys separated, and Mr. Kennedy conveyed his interest in the Property to Ms. Kennedy. After the conveyance, Ms. Kennedy fell behind on her payments and sought loss mitigation from Chase, resulting in a modification agreement dated December 2011 (the "Chase Modification

Agreement"). Ms. Kennedy alleges that she subsequently "made the first modification and other monthly payments according to the terms of the Chase Modification Agreement." Complaint, ¶ 18.

Servicing of the loan was transferred to Vericrest Financial, now Caliber, in or about March 2013. After that transfer, Ms. Kennedy maintains that she "made payments to Vericrest in March and April 2013, by telephone, in accordance with the terms of the Chase Modification Agreement." Complaint, ¶ 20. She then received notice that loan servicing was changing to Caliber in May 2013, at which time she called Caliber to inquire how and when to make her mortgage payments. She made her monthly payment while on the call with Caliber.

On June 20, 2013, Chase assigned the loan and deed of trust to Caliber. "In or about June 2013, Plaintiff called Caliber to make a payment and was informed by Caliber that her mortgage loan was under 'modification review' and instructed her to hold off on making payments until Caliber could confirm the amount of her monthly mortgage payment." Complaint, ¶ 25. Ms. Kennedy called Caliber in June and July 2013 in an effort to make her mortgage payments, but her payments were refused due to "modification review." *Id.* at ¶ 26. Caliber sent Ms. Kennedy a modification solicitation on July 15, 2013, but later notified her that the solicitation was sent in error. *Id.* at ¶¶ 27-29. Meanwhile, Caliber continued refusing her payments, declared the loan to be in default, and began foreclosure proceedings in September 2013. *Id.* at ¶ 30.

Afterwards, Ms. Kennedy submitted a loss mitigation application, and in February 2014, the foreclosure was placed on hold. *Id.* at ¶ 32. For the next year, Ms. Kennedy continued providing documents as requested by Caliber. *Id.* at ¶¶ 33-41. She also sent Notices of Error to Caliber, indicating that the loan had not been serviced properly. In response, Caliber advised her that the Chase Modification Agreement was only temporary, and instructed Ms. Kennedy to apply for another modification. *Id.* at ¶¶ 44-46. According to Ms. Kennedy, Caliber first advised her in

August 2015 that when she began making payments it in May 2013, the account was already behind, and that the payment tendered in May 2013 was applied to the payment for February 2013. Therefore, according to Caliber, the note remained due for March 2013. *Id.* at ¶ 47. Another loss mitigation application was sent to Ms. Kennedy in September 2015. Caliber resumed foreclosure proceedings in October 2015. *Id.* at ¶¶ 48-49.

From October 2015 through May 2017, Ms. Kennedy sent documents to Caliber to support her loss mitigation request. Caliber requested additional documents, and then denied her loss mitigation requests on the basis of "missing documents," forcing the process to begin again. *Id.* at ¶¶ 50-77. Meanwhile, Ms. Kennedy submitted more Notices of Error to Caliber, a complaint to the Consumer Finance Protection Bureau, a complaint with the North Carolina Commissioner of Banks, and communicated with Caliber's counsel in the foreclosure proceedings. *Id.* Nonetheless, foreclosure was resumed, and a foreclosure order was entered in state court on May 16, 2017. *Id.* at ¶ 78.

Ms. Kennedy appealed the foreclosure order on May 23, 2017, and filed her chapter 13 petition on June 22, 2017 to stay the foreclosure. *Id.* at ¶¶ 79-80. On August 20, 2017, Caliber filed a proof of claim, Claim No. 3-1, that included the Chase Modification Agreement as an attachment. *Id.* at ¶ 81. Servicing of the loan was subsequently transferred to SLS. *Id.* at ¶ 82. Ms. Kennedy applied for a loan modification with the new servicer, which was denied based on the "inability to achieve a principal and interest payment reduction." *Id.* at ¶ 83.

As noted above, based on these alleged facts, the Complaint sets forth six claims for relief: (1) Objection to Caliber's Claim because it "fails to adequately support why it should recover the amount of the secured claim based on . . . its refusal to honor the Chase Modification Agreement . . . and its refusal to accept payments from" Ms. Kennedy; (2) Breach of Contract for refusing to

honor the Chase Modification Agreement, for misapplying payments, and for refusing to accept Ms. Kennedy's payments beginning in June 2013; (3) Breach of Good Faith and Fair Dealing for preventing Ms. Kennedy from making mortgage payments, refusing to honor the Chase Modification Agreement, misapplying payments, and failing to investigate Ms. Kennedy's representations with respect to the status of the loan; (4) Unfair Debt Collection as further described below; (5) Unfair Trade Practices for preventing Ms. Kennedy from making payments under the Chase Modification Agreement, refusing to honor the terms of the Chase Modification Agreement, charging interest and fees in excess of those permitted by the Chase Modification Agreement, misapplying payments, and failing to investigate Ms. Kennedy's representations regarding the status of the account; and (6) Declaratory Judgment setting aside the arrearage related to Ms. Kennedy's loan and the foreclosure order.

## DISCUSSION

### I. The Standard for Dismissal Pursuant to Rule 12(b)(6).

Rule 8(a)(2) of the Federal Rules of Civil Procedure provides that "[a] pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." If a complaint fails to meet this threshold obligation, the action should be dismissed under Rule 12(b)(6) for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). For purposes of Rule 12(b)(6), all allegations of fact contained in a complaint must be accepted as true. *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.,* 637 F.3d 435, 440 (4th Cir. 2011).

In *Bell Atlantic Corp. v. Twombly*, the Supreme Court of the United States held that a complaint must include "enough facts to state a claim to relief that is plausible on its face." 550 U.S. 544, 570 (2007). The Court elaborated in *Ashcroft v. Iqbal* that "the tenet that a court must

accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions," and that "only a complaint that states a plausible claim for relief survives a motion to dismiss." 129 S. Ct. 1937, 1949 (2009); *see also Adcock v. Freightliner, LLC*, 550 F.3d 369, 374 (4th Cir. 2008) (mere legal conclusions do not warrant automatic assumption of truth by the court). The allegations must be more than a "formulaic recitation of the elements" of a claim. *Iqbal,* 129 S. Ct. at 1951.

A claim has facial plausibility when the plaintiff pleads enough "factual content to allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Clatterbuck v. City of Charlottesville,* 708 F.3d 549, 554 (4th Cir. 2013). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal,* 129 S. Ct. at 1949. Thus, dismissal under Rule 12(b)(6) is proper when, from the face of the complaint, it is clear that the plaintiff's claims are not supported by law, that one or more facts necessary to assert a valid claim have not been pled, or that facts exist that necessarily defeat the plaintiff's claims.

In reviewing a motion to dismiss under Rule 12(b)(6), the court may review documents attached to the complaint and incorporated by reference, *Clatterbuck,* 708 F.3d at 557, and may properly take judicial notice of matters of public record without converting the motion to one for summary judgment. *Philips v. Pitt County Mem. Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009) (citing *Hall v. Virginia*, 385 F.3d 421, 424 (4th Cir. 2004)).

## II.     Breach of Contract

Ms. Kennedy alleges that Caliber "breached the contract reflecting the existing Loan terms by refusing to honor the Chase Modification Agreement after servicing was transferred to it on or about April 16, 2013, by misapplying payments that were made by Plaintiff following the servicing

transfer and by refusing to accept Plaintiff's Loan payments beginning in June 2013." Complaint, Second Claim for Relief, p. 10 at ¶ 11. Caliber maintains that the claim for breach of contract must be dismissed for two reasons: first, the Complaint was filed after the expiration of the statute of limitations, and second, Ms. Kennedy defaulted in her performance of the contract before the loan was transferred to Caliber. The court will address each in turn.

      A.      **Statute of Limitations**

           1.      **Accrual of Cause of Action**

In North Carolina, the statute of limitations for breach of contract is three years. N.C. Gen. Stat. 1-52(1). "In general a cause or right of action accrues, so as to start the running of the statute of limitations, as soon as the right to institute and maintain a suit arises." *Pierson v. Buyher,* 330 N.C. 182, 186, 409 S.E.2d 903, 905 (1991) (citation omitted). "[A]n action for breach of contract must be brought within three years from the time of the accrual of the cause of action. . . . The statute begins to run on the date the promise is broken." *Penley v. Penley,* 314 N.C. 1, 19-20, 332 S.E.2d 51, 62 (1985) (citations omitted).

Caliber maintains that because Ms. Kennedy's claims are based on Caliber's refusal to accept her payments beginning in June 2013, the statute of limitations expired in June 2016. The Complaint was filed on October 31, 2018, more than five years after payments were refused, and two years after Caliber contends that limitations period ran.

Ms. Kennedy relies on the theory of continuing breach, contending that every time Caliber refused a payment, a new breach of contract occurred. While case law cited by Ms. Kennedy supports the notion that every missed payment is a new breach of contract, *see Martin v. Ray Lackey Enters., Inc.*, 100 N.C. App. 349, 357, 396 S.E.2d 327, 332 (1990) (where a contract imposes on a party on obligation to make periodic payments in installments "the statute of

7

limitations runs against each installment independently as it becomes due"), Ms. Kennedy does not cite any authority for her position that every *refused* payment is a new breach of contract. Even so, as noted by Caliber, while the Complaint recites ongoing communications and negotiations with Caliber, the last allegation of a tendered and refused payment was in August 2013. Complaint, ¶ 28. Thus, under Ms. Kennedy's pleading, the time for filing a claim for breach of contract expired sometime in August 2016.

Further, while the Complaint references only the refused and misapplied payments, and not the commencement of foreclosure, if the court generously construed the Complaint to allege that Ms. Kennedy's damages for breach of contract occurred when Caliber began foreclosure, even that dates back to September 2013. *See* Complaint, ¶ 30.

> It is a well-settled rule in North Carolina that a cause of action for breach of contract accrues, and the statute of limitations period begins to run, "[a]s soon as the injury becomes apparent to the claimant or should reasonably become apparent[.]" *Liptrap v. City of High Point,* 128 N.C. App. 353, 355, 496 S.E.2d 817, 819, *disc. review denied,* 348 N.C. 73, 505 S.E.2d 873 (1998) (citing *Pembee Mfg. Corp. v. Cape Fear Constr. Co.,* 313 N.C. 488, 493, 329 S.E.2d 350, 354 (1985)). Further damage incurred after the date of accrual is only an aggravation of the original injury and does not restart the statutory limitations period. *Id.*

*ABL Plumbing and Heating Corp. v. Bladen County Bd. of Educ.*, 175 N.C. App. 164, 168, 623 S.E.2d 57, 59 (2005) (construing 2-year statute of limitations for breach of contract against a local governmental unit). Further, in *MedCap Corp. v. Betsy Johnson Healthcare Systems*, 16 Fed. Appx. 180, 184, 2001 WL 880097 (4th Cir. 2001), the Fourth Circuit found a definitive, total repudiation of the contract to be key in distinguishing cases involving continuing breaches from those involving a continuing *effect*. Here, the Complaint itself suggests that Caliber specifically

denied the applicability of the Chase Modification Agreement via letter dated June 26, 2015.[1] Complaint, ¶ 45.

This case is not unlike the unpublished North Carolina Court of Appeals case of *Crabtree v. Smith*, No. COA 16-864, 2017 WL 1276069, 797 S.E.2d 710 (table) (N.C. App. April 4, 2017) (unpublished), *disc. review denied*, 370 N.C. 375, 807 S.E.2d 152 (Dec. 7, 2017), in which the appellate court upheld the trial court's dismissal of claims for breach of contract where the plaintiff contended the mortgage servicer failed to implement the terms of a loan modification agreement, and the plaintiff was aware of this failure as early as July 2011, but the complaint was filed in November 2015. There, the plaintiff also contended that a "continuing wrong" extended the statute of limitations, but the court found that the complaint "fails to allege any wrongdoing that fell within the three year statute of limitations period."

Giving Ms. Kennedy the benefit of three potential dates upon which her claim for breach of contract might have accrued – the last date a payment was allegedly tendered and refused (August 2013), the date on which Caliber's alleged breach caused her damage through commencement of foreclosure (September 2013), and the date on which Caliber clearly stated it was not bound by the Chase Modification Agreement (June 26, 2015) – the Complaint was filed more than three years after each of those dates. As a result, the claim for breach of contract is barred by the statute of limitations.

---

[1] The exhibits to the Complaint and to the Proof of Claim are inconsistent as to whether Caliber was, in fact, honoring the terms of the Chase Modification Agreement. For example, while the letter from Caliber states that the agreement was only temporary, the pay history attached to the Proof of Claim (Claim No. 3-2 at 4-7), reflects an expected monthly payment amount in precisely the amount listed in the Chase Modification Agreement.

**2.      Recoupment**

Ms. Kennedy also maintains that the statute of limitations is inapplicable because the breach of contract claim constitutes the defense of recoupment to Caliber's claim. *See* Plaintiff's Memorandum of Law in Opposition to Defendant's Motion to Dismiss the Adversary Proceeding, D.E. 24 at 7. "A recoupment is a [defense] by which a defendant, when sued for a debt or damages, might recoup the damages suffered by himself from any breach by the plaintiff of the same contract." *Settlers Edge Holding Company, LLC v. RES-NC Settlers Edge, LLC*, 793 S.E.2d 722, 732, 2016 WL 7094060 (N.C. App. 2016) (quoting *Hurst v. Everett*, 91 N.C. 399, 404–05 (1884)). Recoupment is "defined as a '[r]eduction of a plaintiff's damages because of a demand by the defendant *arising out of the same transaction*' . . . [and] is not subject to the otherwise applicable limitations period." *In re S. Eye Ctr.–Pending Matters*, 2016 NCBC LEXIS 59, at *21, 2016 WL 4163928 (N.C. Super. Ct. 2016) (internal citations omitted).

While Ms. Kennedy may be correct that the statute of limitations is inapplicable to recoupment raised in defense to Caliber's proof of claim, and that recoupment may properly be assertible in an adversary proceeding, she has not pled recoupment in her Complaint. Her objection to Caliber's claim asserts that the proof of claim "fails to adequately support why it should recover the amount of the secured claim based on . . . its refusal to honor the Chase Modification Agreement . . . and its refusal to accept payments from" Ms. Kennedy. Complaint, First Cause of Action, p. 9 at ¶ 4. Nothing in the Complaint puts Caliber on notice that Ms. Kennedy is asserting a theory of recoupment: the word appears nowhere in the Complaint, and breach of contract is pled as an affirmative claim for relief. Recoupment could be used defensively, but this Complaint simply does not assert it as an offensive cause of action. As a result, the argument that the statute

10

of limitations does not preclude the defense of recoupment has no applicability as the matter stands before the court.

### B. Prior Breach of Contract by Ms. Kennedy

Caliber also contends that the Complaint does not allege that Ms. Kennedy was current and in good standing under the terms of the Chase Modification Agreement at the time the loan was transferred to Caliber. In fact, Caliber contends, Ms. Kennedy cannot allege that she was current, because the documents attached to the Complaint demonstrate that she was not. Specifically, according to Caliber, the pay history included within Exhibit 22 to the Complaint, as well as numerous letters from Caliber to Ms. Kennedy and her counsel, show she was in arrears when Caliber first rejected her payment. *See* D.E. 1-22 at 5-46. Accordingly, Caliber maintains, Ms. Kennedy has not alleged an essential element for her claim of breach of contract – absence of a prior breach by Ms. Kennedy.

The court agrees that this essential fact is absent from the Complaint, and thus the claim for breach of contract is properly dismissed pursuant to Rule 12(b)(6). However, to the extent Ms. Kennedy may accurately plead this essential element, nothing in this order precludes leave to amend on this point.

### III. Breach of the Duty of Good Faith and Fair Dealing

Caliber maintains that a cause of action for breach of the duty of good faith and fair dealing cannot stand absent a viable claim for breach of contract, citing *Shalford v. Shelley's Jewelry, Inc.*, 127 F. Supp. 2d 779, 787 (W.D.N.C. 2000) (*citing Polygenex Int'l, Inc. v. Polyzen, Inc.*, 133 N.C. App. 245, 251, 515 S.E.2d 457, 461-62 (1999)). In response, Ms. Kennedy does not refute Caliber's statement of the law on this point, but instead maintains that she has stated a claim for breach of contract. Because the court has determined that, as pled, the claim for breach of contract

is barred by the statute of limitations and fails to assert facts to support an essential element, the claim for breach of the duty of good faith and fair dealing must also be dismissed for failure to state a claim upon which relief may be granted.

### IV.     Unfair Debt Collection

In her Fourth Cause of Action, Ms. Kennedy seeks relief under the North Carolina Debt Collection Act, North Carolina General Statutes §§ 75-50 – 75-55. Specifically, she contends that (1) Caliber attempted to collect its debt through the use of unfair threats in violation of § 75-51 by continuing to request loan modification documents while pursuing foreclosure and by not honoring the Chase Modification Agreement; (2) Caliber attempted to collect its debt through the use of fraudulent, deceptive, and/or misleading representations in violation of § 75-54 by (a) repeatedly asserting the loan was in delinquent status, saying that the loan would be accelerated, and that the property could be sold to satisfy the loan, (b) falsely representing the amount owed, and (c) refusing to honor the Chase Modification Agreement; and (3) Caliber attempted to collect its debt through the use of unconscionable means in violation of § 75-55 by (a) repeatedly asserting the loan was in delinquent status, would be accelerated, and that the property could be sold to satisfy the loan, (b) falsely representing the amount owed, and (c) refusing to honor the Chase Modification Agreement.[2] Caliber maintains that none of the allegations state violations of the referenced North Carolina statutes.

---

[2] The factual allegation that Caliber refused to honor the Chase Modification Agreement supports only a claim for breach of contract, which, even if wrongful, cannot not serve as the basis for a North Carolina Debt Collection Act claim. *See Costin v. Ally Bank Corp.*, No. 7:13–CV–113–BO, 2014 WL 130527, at *2 (E.D.N.C. Jan. 13 2014) ("An NCDCA claim also must meet the generalized requirements of UDTPA claims. . . . A breach of contract, even if intentional, is not sufficiently unfair or deceptive to sustain an action under N.C.G.S. § 75-1.1.").

### A. Unfair Threats

Section 75-51 provides as follows:

No debt collector shall collect or attempt to collect any debt alleged to be due and owing from a consumer by means of any unfair threat, coercion, or attempt to coerce. Such unfair acts include, but are not limited to, the following:

(1) Using or threatening to use violence or any illegal means to cause harm to the person, reputation or property of any person.
(2) Falsely accusing or threatening to accuse any person of fraud or any crime, or of any conduct that would tend to cause disgrace, contempt or ridicule.
(3) Making or threatening to make false accusations to another person, including any credit reporting agency, that a consumer has not paid, or has willfully refused to pay a just debt.
(4) Threatening to sell or assign, or to refer to another for collection, the debt of the consumer with an attending representation that the result of such sale, assignment or reference would be that the consumer would lose any defense to the debt or would be subjected to harsh, vindictive, or abusive collection attempts.
(5) Representing that nonpayment of an alleged debt may result in the arrest of any person.
(6) Representing that nonpayment of an alleged debt may result in the seizure, garnishment, attachment, or sale of any property or wages unless such action is in fact contemplated by the debt collector and permitted by law.
(7) Threatening to take any action not in fact taken in the usual course of business, unless it can be shown that such threatened action was actually intended to be taken in the particular case in which the threat was made.
(8) Threatening to take any action not permitted by law.

N.C. Gen. Stat. § 75-51.

In its motion to dismiss, Caliber contends that the only unfair "threat" listed in the statute that could possibly be implicated by the allegations in the Complaint is § 75-51(8), threatening to take an action not permitted by law. However, the factual allegations Ms. Kennedy indicates violate this section are that Caliber continued to request loan modification documents while pursuing foreclosure and did not honor the Chase Modification Agreement. She does not explain how either of these things is "not permitted by law." Her memorandum of law in opposition to the motion to dismiss does not address how any particular action violates the North Carolina Debt Collection Act. Instead, she simply contends that because Caliber is a debt collector, Ms. Kennedy

13

is a consumer, and the collection was in or affecting commerce (none of which is contested), she has stated a claim for relief under the statute. Similarly, at the hearing, there was no attempt to tie the factual allegations to the specific contested requirements of the statutes. Without any further detail, the Complaint does not state a plausible claim under § 75-51.

### B. Fraudulent, Deceptive, or Misleading Representation

Section 75-54 provides:

No debt collector shall collect or attempt to collect a debt or obtain information concerning a consumer by any fraudulent, deceptive or misleading representation. Such representations include, but are not limited to, the following:

> (1) Communicating with the consumer other than in the name (or unique pseudonym) of the debt collector and the person or business on whose behalf the debt collector is acting or to whom the debt is owed.
> (2) Failing to disclose in all communications attempting to collect a debt that the purpose of such communication is to collect a debt, unless the communication is made to a third-party pursuant to G.S. 75-53 for the purpose of obtaining location information about the debtor.
> (3) Falsely representing that the debt collector has in his possession information or something of value for the consumer.
> (4) Falsely representing the character, extent, or amount of a debt against a consumer or of its status in any legal proceeding; falsely representing that the collector is in any way connected with any agency of the federal, State or local government; or falsely representing the creditor's rights or intentions.
> (5) Using or distributing or selling any written communication which simulates or is falsely represented to be a document authorized, issued, or approved by a court, an official, or any other legally constituted or authorized authority, or which creates a false impression about its source.
> (6) Falsely representing that an existing obligation of the consumer may be increased by the addition of attorney's fees, investigation fees, service fees, or any other fees or charges.
> (7) Falsely representing the status or true nature of the services rendered by the debt collector or his business.
> (8) Communicating with the consumer in violation of the provisions of G.S. 62-159.1(a), 153A-277(b1), or 160A-314(b1).

N.C. Gen. Stat. § 75-54.

The Complaint alleges that Caliber violated this statute by (a) repeatedly asserting the loan was in delinquent status, saying that the loan would be accelerated, and that the property could be

14

sold to satisfy the loan, (b) falsely representing the amount owed, and (c) refusing to honor the Chase Modification Agreement. As noted by Caliber, the only provision of § 75-54 that these facts might implicate is § 75-54(4), which prohibits "falsely representing the character, extent, or amount of a debt against a consumer or of its status in any legal proceeding." Even accepting as true the allegations that the representations with respect to the delinquency, ability to accelerate, and potential sale of the property were false (facts that may be contradicted by documents attached to the Complaint itself), there is no allegation that these representations were made "in any legal proceeding" as required by the statute. *See Crabtree v Smith*, 2017 WL 1276069, at *4; *see also Key v. Dirty South Custom Sound & Wheels*, No. No. 5:09-CV-32-D, 2009 U.S. Dist. LEXIS 46907, * 3 (E.D.N.C. 2009). Perhaps Ms. Kennedy intended to plead that these representations were made in connection with the foreclosure proceeding, but the Complaint does not contain those factual assertions. Nor did she explain in either her memorandum or at the hearing how the factual allegations tie specifically to the statute as contested. As a result, the Complaint in its present form fails to state a claim under § 75-54.

### C. Unconscionable Means

Section 75-55 provides:

No debt collector shall collect or attempt to collect any debt by use of any unconscionable means. Such means include, but are not limited to, the following:

> (1) Seeking or obtaining any written statement or acknowledgment in any form containing an affirmation of any debt by a consumer who has been declared bankrupt, an acknowledgment of any debt barred by the statute of limitations, or a waiver of any legal rights of the debtor without disclosing the nature and consequences of such affirmation or waiver and the fact that the consumer is not legally obligated to make such affirmation or waiver.
> (2) Collecting or attempting to collect from the consumer all or any part of the debt collector's fee or charge for services rendered, collecting or attempting to collect any interest or other charge, fee or expense incidental to the principal debt unless legally entitled to such fee or charge. Nothing in this section shall be construed to prohibit the collection of filing fees, service of process fees, or other

> court costs actually incurred. The collection of such fees is not a violation of this Article or of Article 15 of Chapter 53 of the General Statutes.
> (3) Communicating with a consumer (other than a statement of account used in the normal course of business) whenever the debt collector has been notified by the consumer's attorney that he represents said consumer.
> (4) Bringing suit against the debtor in a county other than that in which the debt was incurred or in which the debtor resides if the distances and amounts involved would make it impractical for the debtor to defend the claim.

N.C. Gen. Stat. § 75-55.

Again, the Complaint alleges in a conclusory fashion that Caliber violated this statute by (a) repeatedly asserting the loan was in delinquent status, saying that the loan would be accelerated, and that the property could be sold to satisfy the loan, (b) falsely representing the amount owed, and (c) refusing to honor the Chase Modification Agreement. While the list is nonexclusive, the examples of "unconscionable" means are different in nature from those alleged in the Complaint. Again, Ms. Kennedy has not explained in either her memorandum or at the hearing how the factual allegations tie specifically to the statute as contested. As a result, the Complaint fails to state a claim under § 75-55.

Finally, Caliber also contends that with respect to all of the claims asserted under the North Carolina Debt Collection Act, Ms. Kennedy has not alleged "an injury proximately caused by Caliber's allegedly unfair act," maintaining that "[a]lthough she claims that she was facing foreclosure and suffering mental anguish on account of Caliber's actions, she has not alleged and cannot allege that but for any action(s) of Caliber, she would not have been facing foreclosure or suffering mental anguish." D.E. 14 at 9, ¶ 30. Specifically, Caliber notes that the documents attached to the Complaint demonstrate that Ms. Kennedy repeatedly fell behind on her mortgage payment and did so prior to it taking over the loan. *Id.* Ms. Kennedy did not address this argument in her memorandum or at the hearing.

As noted in the section addressing the breach of contract claim, Ms. Kennedy does not plead that she was current with her mortgage payments at the time Caliber began servicing the loan. Whether she could properly amend to assert that fact is an open question. However, there may be facts that Ms. Kennedy could plead to satisfy the causation element of the Debt Collection Act for purposes of Rule 12(b)(6).

## V.     Unfair Trade Practices

The Complaint alleges that Caliber violated the North Carolina Unfair Trade Practices Act, North Carolina General Statutes § 75-1.1, by preventing Ms. Kennedy from making payments under the Chase Modification Agreement, refusing to honor the terms of the Chase Modification Agreement, charging interest and fees in excess of those permitted by the Chase Modification Agreement, misapplying payments, and failing to investigate Ms. Kennedy's representations regarding the status of the account.

Caliber contends that this claim fails as a matter of law for two reasons: first, mere breach of contract cannot establish a claim for unfair trade practices under the statute, and second, the North Carolina Debt Collection Act is the exclusive remedy for unfair practices in debt collection. *See* D.E. 14 at 5-6. In her response, Ms. Kennedy maintains that she has plausibly alleged the elements of a claim under § 75-1.1, but she does not address the specific legal arguments raised by Caliber.

Caliber is correct in its recitation of the law with respect to the interaction of the Debt Collection Act and the Unfair Trade Practices Act.

> Article 1 of Chapter 75 of the North Carolina General Statutes contains the North Carolina Unfair Trade Practices statutes ("NCUTP"), which can be found at N.C. Gen. Stat. § 75-1.1 *et seq.* (2015). Article 2 of that Chapter deals with prohibited acts by debt collectors. "The specific and general provisions of [Article 2] shall exclusively constitute the unfair or deceptive acts or practices proscribed by G.S. 75-1.1 in the area of commerce regulated by this Article." *Friday v. United*

17

>    *Dominion Realty Trust, Inc.*, 155 N.C. App. 671, 678, 575 S.E.2d 532, 536 (2003) (quoting N.C. Gen. Stat. § 75-56 (2001)); *see also* N.C. Gen. Stat. § 75-56(a) (2015).

*Crabtree v Smith*, 2017 WL 1276069, at *3. *See also Costin v. Ally Bank Corp.*, No. 7:13–CV–113–BO, 2014 WL 130527, at *1 (E.D.N.C. Jan. 13, 2014) ("Because plaintiff has also alleged a complaint under the NCDCA, the Court must dismiss plaintiff's UDTPA claim as her exclusive remedy is found under the NCDCA.").

Here, because Ms. Kennedy has also alleged a claim under the Debt Collection Act, she cannot state a claim under the Unfair Trade Practices Act and the claim must be dismissed.

## VI.    Declaratory Judgment

In her Sixth Claim for Relief, Ms. Kennedy seeks a declaratory judgment that "sets aside the arrearage related to the Plaintiff's loan and the foreclosure order related to the underlying foreclosure proceeding." Complaint, D.E. 1 at 14, ¶ 37. Caliber maintains that the request for declaratory relief is procedurally inappropriate. However, the court can address this issue more directly: first, the adjudication of the proper amount of the arrearage on the loan should be conducted in conjunction with the claim objection, and not a request for declaratory relief. Second, this court does not have jurisdiction to set aside the state court's foreclosure order. While a determination of the claim objection may have some impact on future proceedings in the foreclosure action, this court does not sit in review of the state court and cannot declare its order invalid. Accordingly, the claim for declaratory judgment will be dismissed.

## VII.   Claim Objection

Ms. Kennedy's first claim for relief is an objection to the claim filed by Caliber in her chapter 13 case. Caliber maintains that to the extent the basis for the objection is Ms. Kennedy's affirmative claim for breach of contract, it should be dismissed for the reasons already addressed.

The court will not dismiss Ms. Kennedy's objection to Caliber's claim, but the Complaint should be amended to more clearly set forth the various objections to the claim. To the extent Ms. Kennedy contends there is an error in Caliber's payment history, for example, she should clearly identify the error. It does not appear that Ms. Kennedy contends that Caliber has *no* claim; thus, it is incumbent upon her to put Caliber on notice as to the disputed portions of the claim.

## CONCLUSION

Based on the foregoing, Claims for Relief Two, Three, Four, Five, and Six of the Complaint are DISMISSED for failure to state a claim upon which relief may be granted. For each dismissed claim, within 28 days of the date of this order, Ms. Kennedy may seek leave to amend the Complaint. Should Ms. Kennedy choose not to seek leave to amend the dismissed claims, she may elect to pursue the claim objection through the claims objection process rather than this adversary proceeding.

## END OF DOCUMENT